Will the clerk please call the first case? 3-23-0061 Michael Brenczewski Jr. Appellant v. Forest Preserve District of Will County, Appalachia. Ms. Preston, you may proceed. Good morning. Megan Preston on behalf of the Appellant Plaintiff. Thank you for being here this morning. I've not done one of these by Zoom, so this could be interesting. So the of this case, it's a tort immunity case, although there were two counts brought by my client. One was for intentional interference with business expectancy. The second count is for a violation of the Constitution for a taking without compensation. But a lot of this argument will focus on the tort immunity arguments. My client obtained a license to hunt certain property. The license was initially given between 1996 and 1998. It covered approximately 150 acres of property. In 2003, the license agreement was reduced to a writing. Almost from the start, there were attempts by employees and commissioners from the Forest Preserve Districts to interfere with my client's right to use the license. There were also some attempts early on by the Sheriff and the Illinois Department of Natural Resources. However, this obviously focuses on the actions of the Forest Preserve District. Between 2002 and 2005, there was a death blind that was burned on three occasions. And then starting in 2007, there were attempts by the district to block my client's roadway access onto the property. There was a gate that was constructed in 2007. In 2000, shortly thereafter, he was given a key to access the gate. However, then in 2008, 2009, and 2010, the lock was either changed or there was an otherwise interference with my client's ability to use the gate. In 2017, certain commissioners began claiming that my client was trespassing on the property or littering on the property. There were new threats to block access from the roadway. And that continued on until 2020. In early 2020, there was apparently a subdivision that sought to annex into Naperville. There was shortly after the district decided to acquire certain property contained within the licensed area. Of the 150 acres, the district ended up ultimately purchased 0.38 acres. The purchase price was approximately $55,000. There was an appraisal obtained reflecting that the actual value of that parcel was approximately $4,000. And we alleged in our complaint that that was in violation of the district's policies on the acquisition of property. So, the district brought a motion to dismiss our complaint pursuant to 619.1 with respect to the intentional interference of business expectancy. They alleged in part that they were protected by sections 2, 109, and 201 of the Tort Immunity Act, arguing that their employees and representatives were in a position to determine policy or exercise discretion. Our position is that the trial court erred in finding that tort immunity applied, in large part because there was no evidence submitted by the district which demonstrated that the Tort Immunity Act did in fact apply. There was no affidavit submitted in support of that position. And there are ultimately no facts to reflect that tort immunity did in fact provide protection. Council, if I can interrupt just for a second. Count one of the complaints, the constitutional violation, and count two was the business expectancy. I think you had that reversed to start with. And just before you get into your analysis here, you are talking about the 619 portion of this, not the 615, correct? Correct. And the 619 obviously was also granted on the Tort Immunity Grounds that you talked about. But after that happened, did you ask for the opportunity to file a medical complaint? Not based on the application of the Tort Immunity Act. And there is a note in the order granting the motion to dismiss with respect to the 2615 arguments raised by the defendant that at least with respect to the tort claim, the court would be inclined to grant leave to the plaintiff to re-plead except for the application of the Tort Immunity Act. Did you do that? I did not request leave to amend based on the findings in the order that it was the court's position that it would be a moot point to attempt to re-plead because the Tort Immunity Act applied. So in other words, there was some conflation between the 619 and 615 or overlapping between the 2619 and 615 arguments with respect to the findings by the court. Which is often the case, unfortunately, with 619.1. But in this particular case, the constitutional claim, you did not file an amended complaint trying to state a cause of action, at least in light of the court's ruling on the 615, correct? Correct. That is correct. So with respect to the tort immunity portion of the argument, of course, the act requires that in order for it to apply, the employee must hold either a position of determination of policy or the exercise of discretion. And the act giving rise to the claim must be both a determination of a policy and the exercise of discretion. Policy determinations require governmental employees to balance competing interests and make judgment calls. And with respect to whether an act is discretionary or ministerial, there is no bright line rule for the court to apply. The courts have held that it should be analyzed on a case-by-case basis. And the Snyder case, which we cited in our brief, discusses matters in which there is some overlap between a discretionary act and a ministerial act. And whether the act is more ministerial or more discretionary. That case is also discussed in the relatively recent Illinois Supreme Court case, the Straus case, which was pending while this case was before the trial court. I filed a motion for reconsideration while the Straus case was pending on me to appeal to the Illinois Supreme Court. The Straus case distinguishes between cases like Snyder and the case in Straus, where there was an abundance of evidence in the Straus case that was presented to demonstrate that the alderman who was accused of the bad actions, in fact, was making policy determinations and had complete discretion when he was submitting various proposals to the city in order to change the zoning that was at issue with the plaintiff in that case. So, there's a difference between a case like Straus, where the defendant presents affirmative evidence detailing why the decision or the actions were policy determinations and were discretionary, as opposed to the Snyder case, in which the plaintiff relied in part by a certain manual requiring that signage be placed to prevent accidents like the one at issue in that case, or this case, where our argument was or our allegations were in the complaint that the district failed to comply with its own manual on the rules for acquiring certain property. So, had the defendant presented affirmative evidence by way of an affidavit as to exactly why it believes that the district's decisions were an exercise of discretion and that its determination of policy, we may be in a different position, but that didn't happen here and it appears to us that the trial court improperly placed the burden on the plaintiff rather than placing the burden on the defendant with respect to the tort immunity issues. With respect to the 2615 arguments raised, the 615 argument with respect to intentional interference of business expectancy focused on a privilege by a defendant to interfere. So, the four elements of the claim are the expectancy of a business relationship, defendant's knowledge, unjustified interference by the defendant, and damages. The court's position, the court's order focused on the third prong or the third element of the claim and analyzed the defendant's argument that it was in this case because of its purchase of the property. And here's where I think the arguments under 619, the tort immunity issue, and the ultimate elements of the claim for interference of business expectancy got a little muddled. There was discussion in our brief about the defendant's motive or its intent when it was interfering with the business relationship. And the defendant came back or the district came back with respect to the tort immunity argument and said no intent doesn't matter under this trial's case. It doesn't matter if the governmental actor was acting in bad faith or not. You just look at the issues outlined with respect to the application of the tort immunity act. That would be true if we were only talking about the talking about the right to interfere with an agreement specifically with respect to just the elements of intentional interference of business expectancy. I don't think that that is the case. You have to analyze the motive or intent of the defendant when you're determining whether there was a justified interference or not. And that's why I think the trial court got a little tripped up because there was some overlapping argument when those things should have been taken as distinct elements. And I think, oh, I'm, I think you're muted, Justice. Justice McDade is muted. Yes. I'm sorry, I muted so you couldn't hear the dog. My question was exactly what is it that's the recognizable business interest? Um, sure. So my client alleged that he would use the prop. He, he lost approximately, I think it was $175 a day that he would otherwise have had to pay to rent property elsewhere. So in other words, that the use of the property. That's the business expectancy. Okay, thank you, sir. Well, what he had a license agreement, Miss Preston. Yes. Okay. And that was an agreement that was terminable at will by the landlord. That is true. And when was that terminated? It was terminated as part of the sale of the point three, eight acres to the district. The sale closed in June of 2020. And I believe the notice to terminate the license agreement with respect to the entire acreage was sent in May of 2020. So approximately a month before the closing date. And so what was the interest your client had after that? After the termination of the license agreement, my client no longer had any interest in the property. So what, what, what was the tortious interference? The tortious interference is the requirement that the owner, in other words, leveraging the overpayment of the purchase of the point three, eight acres to induce the owners to terminate the license agreement. The distinction being that because there was no ongoing contract, we couldn't bring a claim for intentional interference with a contract. But we did, having had this license agreement in place for decades, we believe my client had a legitimate interest in expecting that the business that the relationship would continue. Isn't a license by definition terminable at will? They are terminable at will. We did cite several cases, though, that talk about different types of licenses. Oh, I think actually I'm, I'm thinking more in the terms of the constitutional argument, but when licenses can be protected by property interests. And again, that's why we brought the and interference with business expectancy, rather than interference with a contract, recognizing that there was no contracts to, to necessarily continue past, you know, June, June of 2020, or May of 2020, when the agreement was terminated. But that given the amount of time that the agreement had been in place, we had a legitimate expectation that that relationship would continue. Ms. Preston, the license that you were talking about in those other cases, the driver's license is one of them, correct? Yes. Why is there a difference between a license and a legal term of order? I, I'm sorry, I missed that. Quite a different license than the legal term of order, the license that we're talking about, the permission to do something. I think that's, that's in effect what a license is, whether it's a professional license, a driver's license, or another type of license. There's, there's never a, a, in and of itself, a requirement that it continue forever. It is always permission. The state grants permission to operate a vehicle, the state grants permission to engage in various, various business activities. And in this case, the owner of property granted us permission to use the property in a certain way. So what you're saying is that, okay, so there's no difference between a driver's license that license is. And so it's, the expectancy is that the permission will continue forever? I, I think it would depend on a case-by-case basis, how long that the permission continues. So specifically in the case of this license, which had been in effect since the late 90s, I think that there was a legitimate expectation that, that the license, that the relationship would continue, but for the interference from the district. Okay. Your time is up. You'll have time and reply, but before we leave, are there any questions from the bench? No. No further questions. Okay. Thank you. You'll have time and reply, Ms. Preston. Thank you. Mr. Murphy, you may respond. Good morning, your honors. Jim Murphy on behalf of Appellee Forest Preserve District of Will County. As you were just touching upon, the license at issue is a term, was terminable at will, therefore sort of going to count one, it does not provide a property interest that is constitutionally subject to protection. That is why count one was dismissed. With regards to the tort immunity, it's our position and based on the briefs and what we preserve, district makes determinations of whether to buy property as a matter of discretion and as a matter of policy. And they have the authority to do that specifically granted by statute. That is in effect policy. So in this situation, we didn't need to provide an affidavit in terms of showing that it was a policy decision or a discretionary decision. Purchase of property is net, naturally falls within that type of scope. That is why the tort immunity applies. With regards to the interference, again, the question is different between interference with a contract and interference with a business expectancy. If you have an interest of your own, you have a privilege to interfere with an expectancy. That's all the license was in this case is that it was an expectancy of a continuation. The interest that the Forest Preserve District had was to actually purchase property that it could then use. It exercised that and that's how it interfered with the license. So basically, there was a privileged interfere. Tort immunity applies because it was a matter of discretion and the license was terminable at will. How many acres does the Forest Preserve? Yes, Forest Preserve, is it right? Yes. How many acres do they own? Totally, I have no idea. Probably, I would guess thousands, but I'm not sure. What's the purpose of a Forest Preserve? Basically, to protect the fauna. I think it was the fauna and the wildlife and to provide basically beauty and education and open land. What about flora? Flora too, yes, flora and fauna. Flora and fauna. How many hunting permits do they or licenses do they issue? That I do not know. Any? I do not know that. Or is it just hiking trails through the woods? From what I've seen from the Forest Preserve District around here, it's more than hiking trails, but I do not know if it includes hunting. Mr. Murphy, in your argument, it doesn't matter if they purchase this property to frustrate people from hunting, does it? It does not. It does not. In fact, there's sort of a question of mixed motive. This sort of goes into the intentional interference. What has to be done is that the interference is solely for the purpose of malicious motives when it comes to tortious interference with a business expectancy. In here, because they actually were purchasing property, that doesn't fall into it. Their exercising is statutorily provided ability to purchase property. So their malicious motives, which are kind of outlined by your opposing counsel, don't matter? They don't matter. Okay, but yeah, but the facts suggest something like that, don't they? Well, in terms of an ongoing issue, and then you might have to go into exactly where their other property was, but effectively, you can get property. I'd start sort of hypothesizing in terms of whether a forest preserve district wants hunting next to their other property, which could cause other problems. But that would be if we went beyond the motion to dismiss. So I'm just thinking of the old common law, going to a nuisance and complaining about it. Yes, which is not quite, I don't think, the same as it used to be in terms of going to it. And unfortunately, I think that's why there's some laws that actually protect agriculture that might not otherwise be protected. But not protecting hunting. I don't know that there is that, that it's gone that far. I'm not sure. I have not delved into that, but I certainly understand the question. Okay. Mr. Murphy, the people, oh, I'm sorry. No, I'm okay. Go, Merrick, please. The people who were complaining about the hunting, are these people who live, I'm assuming they don't live in the forest district. Where are they? I do, because we did not, that does not, it's more into the facts rather than the pleadings. I do not recall, but my recollection is this is sort of a strip of land that's maybe behind some subdivisions. And it's almost in the nature of a pathway, sort of a strip forest preserved than anything else. That's my recollection, but that's not developed in the record. Does the forest district have any responsibility for those people or any concerns for their interests? I think it certainly has maybe concerns for their interest, because they're the people that would most likely use the forest preserve that's closest to them. Whether it has any legal obligation, that delves into a number of other matters that are not addressed here. And in terms of buying property, does the forest district have any restrictions or requirements in the purchase of property? It does have some internal requirements that are alleged that were not followed here, but those are not binding on them if they're internal. There are also other restrictions statutorily that it has to be basically for preservation of flora and fauna and keeping it within access to being open to the public for public usage, those types of things. If it was alleged that it was not being used for any of that, there might be a cause of action. I don't know. We haven't really looked at it that far. Are there any restrictions on how much you can pay for property? No. Are there any restrictions in terms of how you go about determining the price? There are not statutorily that I'm aware of. That would all be an internal issue with regards to what the forest preserve's own policy were. Is there anything in the forest policy policies that allows you to purchase $4,000 property for $50,000? Within the policy, perhaps not, but within regard to any time that there would be a vote by the forest preserve district board, that would override the policy because they actually are the ones that are setting the policy. Okay. Thank you. So, any remedy by the citizens of Will County is to throw them out of office? It's the ballot box, correct. As with many other situations of expenditures by governmental entities or decision-making on any other level for that matter. Hello. Any other further questions from the bench? Okay. Thank you, Mr. Murphy. Mr. President, you may reply now. Thank you very much. I just want to make a couple of distinctions. With respect to the motive of a defendant in an intentional interference claim, it is relevant when we're discussing a justification or privilege to interfere. So, when looking at the 2615 argument, the allegations with respect to the district's conduct over a period of time and its intention of purchasing the property is relevant. And we cited to the case Candela, Chicago v. Evans Mill Supply 51 LF 338 for that proposition. It's the tortious interference or 2619 argument where the courts have found that you don't take the motive of the defendant into account when simply analyzing whether you're applying the Tort Immunity Act and finding that they were immune from a claim. However, when you're looking at tort immunity, you have to look at it as a two-pronged analysis. It's not simply whether the governmental employees or actors were in positions to determine policy or exercise discretion. It's both, did they have a position that qualifies and did they, in fact, exercise discretion and engage in discretionary acts with respect to the conduct alleged in the complaint? And I think that's where we fall short because there simply wasn't evidence presented to determine that the actual acts qualified as discretionary acts rather than ministerial acts or something else with respect to the allegations alleged in the complaint. And then the only other distinction I wanted to withdraw to draw, and I think that I probably caused some confusion, that when analyzing whether there is a protected right for purposes of constitutional taking with respect to a license, that is different than looking at whether there is an interference with a legitimate business expectancy with respect to a tort claim. So I just want to clarify that because I think that I was talking about the two things as though they were the same thing. And that's all I have. Thank you. Any questions from the bench? No. Okay. Thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement. A written disposition shall issue.